UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

 PETER DIXON,

                    Plaintiff,

          -v-                              5:20-CV-381

THE CITY OF SYRACUSE,
FORMER POLICE OFFICER AHMAD
MIMS, POLICE OFFICER JACOB
BREEN, POLICE OFFICER PATRICK
MOORE, POLICE OFFICER NICHOLAS
VOGEL, POLICE OFFICER DAVID
CRAW, POLICE OFFICER LEONARD
BROWN, POLICE OFFICER JOEL
DORCHESTER, POLICE OFFICER
ANDREW MURPHY, and
UNIDENTIFIED POLICE OFFICERS,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                      OF COUNSEL:

THE LAW OFFICE OF FRED            FRED B. LICHTMACHER, ESQ.
     LICHTMACHER P.C.
Attorneys for  Plaintiff
116 West 23rd Street, Suite 500
New York, NY 10011

HANCOCK ESTABROOK, LLP           MARY L. D'AGOSTINO, ESQ.
Attorneys for Defendants         JOHN G. POWERS, ESQ.
1800 AXA Tower I
100 Madison Street
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

## **DECISION and ORDER**

## I. **INTRODUCTION**

On April 1, 2020, plaintiff Peter Dixon ("Dixon" or "plaintiff") commenced this civil rights action against defendants the City of Syracuse ("The City of Syracuse"), former police officer Ahmad Mims ("Officer Mims"), police officer Jacob Breen ("Officer Breen"), police officer Patrick Moore ("Officer Moore"), police officer Nicholas Vogel ("Officer Vogel"), police officer David Craw ("Officer Craw"), police officer Leonard Brown ("Officer Brown"), police officer Joel Dorchester ("Officer Dorchester"), police officer Andrew Murphy ("Officer Murphy"), and unidentified police officers (collectively, "defendants").  Dkt. No. 1.

Dixon's amended complaint[1] asserted claims under 42 U.S.C. § 1983 for excessive force, false arrest, malicious prosecution, denial of his right to a fair trial, racial profiling, an illegal stop, and municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Dkt. No. 12.

On June 26, 2020, defendants moved pursuant to Federal Rules of Civil Procedure ("Rule(s)") 12(b)(5) and (6) dismiss certain claims and defendants.

---

[1]  The caption of Dixon's amended complaint substitutes "Police Officer Nicholas Vogel" and "Police Officer Andrew Murphy" for "Police Officer Vogel" and "Police Officer Murphy."  *Compare* Dkt. No. 1, *with* Dkt. No. 12.  Despite the parties' inconsistent reference to Officer Vogel as "Officer Vogel" and/or "Officer Voggel," the Court will refer to this defendant as "Officer Vogel."

Dkt. No. 22.  That motion was granted in part and denied in part on September 30, 2020.  Dkt. No. 31.  Dixon's illegal stop claim was dismissed with prejudice.  *Id.*  Defendants filed an answer to plaintiff's remaining claims on October 15, 2020, Dkt. No. 33, and the parties completed an extensive period of discovery.

On October 27, 2023, defendants moved pursuant to Rule 56 for summary judgment dismissing the remainder of Dixon's claims.  Dkt. Nos. 135, 139, 140, 141, 143.[2]  The motions have been fully briefed and will be considered on the basis of the submissions and without oral argument.

## II.  **BACKGROUND**[3]

### A.  **First Incident**

On April 22, 2017, at approximately 5:50 P.M., Dixon pulled over on Rowland Street in Syracuse, New York.  Breen and Moore Facts ¶¶ 2, 4; Mims Facts ¶ 2; Pl.'s Resp. ¶ 3; Ex. 1 to Lichtmacher Decl., Dkt. No. 157-3 at 3.  According to plaintiff, he pulled over to place a call to Pizza Hut to order pizza for his family.  Breen and Moore Facts ¶¶ 2, 4; Mims Facts ¶ 2; Pl.'s Resp. ¶ 3; Ex. 1 to Lichtmacher Decl., Dkt. No. 157-3 at 3.

---

[2]  Defendants have filed separate motions for summary judgment.  Dkt. Nos. 135, 139–43.

[3]  The following facts are drawn from the parties' statements of material facts to the extent those facts are well-supported by pinpoint citations to the record.  Disputed facts are flagged and described from each party's point of view.  The parties' failures to adhere to the Local Rules of the Northern District of New York ("Local Rule(s)") are discussed at length *infra*.

That day, Officer Mims, Officer Breen, and Officer Moore were working as part of a Crime Reduction Assignment in Syracuse.  Breen and Moore's Facts ¶ 1; Mims Facts ¶ 1.  Officer Breen was driving a marked police car ("Car No. 523") with Officer Mims seated beside him in the front passenger seat; Officer Moore was sitting in the backseat.  Breen and Moore Facts ¶1; Mims Facts ¶ 1.  That same day, Officer Craw and Officer Vogel were assigned to patrol car number 522 ("Car No. 522").  Craw and Vogel Facts ¶ 1.

At about 6:20 P.M., Officer  Mims, Officer Breen, and Officer Moore noticed Dixon's car parked in front of a "no parking" sign.[4]  Breen and Moore Facts ¶¶ 2, 4–5; Mims Facts ¶ 2.  Officer Breen pulled Car No. 523 alongside plaintiff's car.  Breen and Moore Facts ¶ 1.

Officer Mims approached Dixon's driver's side door and asked for plaintiff's license and registration.  Mims Facts ¶¶ 4–5.  Plaintiff's driver's side door window was missing and had been replaced with clear plexiglass.  Pl.'s Resp. ¶ 4.  Because he was unable to roll down his window to hand over his identification, plaintiff attempted to hold his I.D. up to the plexiglass for Officer Mims to inspect.  Pl.'s Resp. to Mims Facts ¶¶ 4–6.

But as Dixon reached for his license on the center console, Officer Mims lost track of plaintiff's hand movements inside the vehicle and became

---

[4]  The sign limited parking on the south curb to the hours between 6:00 P.M. on odd days to 6:00 P.M. on the following even day.  Breen and Moore Facts ¶ 5.

alarmed.  Pl.'s Resp. to Mims Facts ¶ 5; Mims Facts ¶ 7.  Officer Mims drew his weapon on plaintiff and ordered him to get out of the car.  Pl.'s Resp. to Mims Facts ¶ 7; Mims' Facts ¶¶ 7–8.  Plaintiff, too, became alarmed because his three children were seated in the backseat of his car.  Pl.'s Resp. to Mims Facts ¶ 8.

Dixon refused to get out of the car.  Pl.'s Resp. to Mims Facts ¶ 8.  Instead, he reached for the car's gearshift.  Mims Facts ¶ 9.  As plaintiff reached for the gear shift, Officer Mims began to punch the plexiglass covering plaintiff's driver-side window to prevent him from fleeing.[5]  *Id.*  But plaintiff put the car in reverse and turned onto South Geddes street before Officer Mims could stop him.  *Id.* ¶ 10.

Officer Mims ran back to Car No. 523 to give chase.  Mims Facts ¶ 12.  As Dixon turned onto South Geddes Street, Officer Vogel and Officer Craw pursued him in Car No. 522 with Car No. 523—carrying Officer Mims, Officer Breen, and Officer Moore—following right behind.  Mims Facts ¶ 13.  Both cars had their lights and sirens activated.  *Id.*

---

[5] Dixon does not recall that Officer Mims struck him as he attempted to break through the plexiglass.  Pl.'s Resp. to Mims Facts ¶ 11.

**B. <u>Second Incident</u>**

Car No. 523—and Officer Mims, Officer Breen, and Officer Moore—caught up with Dixon's vehicle at the corner of South Geddes and Hartson streets.[6] Mims Facts ¶ 14.  Officer Mims exited the police cruiser and attempted to approach plaintiff's driver-side door but plaintiff put his own car into reverse and turned around on South Geddes street.  Pl.'s Resp. to Mims Facts ¶¶ 15–16; Mims Facts ¶ 17.

According to Dixon, he swerved *around* Officer Mims as he began to hear gun shots.  Pl.'s Resp. to Mims Facts ¶ 19; Ex. 1 to Lichtmacher Decl. at 18–19.  According to Officer Mims, however, as plaintiff turned his car around on South Geddes street, he began to accelerate towards him.  Mims' Facts ¶ 18.  Fearing that plaintiff was going to run him over, Officer Mims fired five consecutive shots without pause at the nose and tires of plaintiff's car.[7]  *Id.* ¶¶ 19–20.

Every one of the Officer Mims' shots missed Dixon.  Mims Facts ¶¶ 21–22.  They also failed to stop the car, which continued down South Geddes street.  *Id.*  Officer Vogel stayed at the scene while Officer Craw attempted to pursue plaintiff in Car No. 522.  Craw and Vogel Facts ¶¶ 8, 22.

---

[6] As some point, Car No. 522 collided with the front passenger area of Dixon's car.  Pl.'s Resp. to Vogel and Craw Facts ¶ 10; Ex. 13 to Lichtmacher Decl., Dkt. No. 153-15 at 3–4.

[7] Office Vogel watched the scene from the other side of Dixon's car.  Craw and Vogel Facts ¶¶ 3–4, 5–6.

A police chase ensued.[8]  Craw and Vogel Facts ¶ 21.  Sometime later, Officer Dorchester and Officer Brown heard a radio transmission describing an altercation between a vehicle and officers on South Geddes street. Murphy, Brown, and Dorchester Facts ¶ 3.  The dispatcher gave a description of the driver that matched Dixon.  *Id.* ¶ 4.  Officer Dorchester and Officer Brown then heard a second radio transmission between the dispatcher and Car No. 523:

> [Dispatcher]: 523, We need to confirm: where shots fired at you or the other way around, sir? [Vehicle No. 523]: Other way around.  Suspect, uh, attempted to hit multiple officers with his vehicle."

*Id.* ¶ 5.[9]

Officer Dorchester and Officer Brown responded.  They encountered Dixon as he was driving toward the Oneida Indian Reservation (the "Reservation"). Murphy, Brown, and Dorchester Facts ¶ 6.  They then pursued plaintiff southbound on Clevland road with their patrol car's lights and sirens activated.  *Id.* ¶ 7.  Officer Dorchester and Officer Brown observed that the tires on the passenger-side of plaintiff's car were missing.  *Id.* ¶ 8.  But plaintiff did not pull over.  *Id.* ¶ 9.

---

[8]  Officer Craw eventually lost sight of plaintiff's car and was unable to actively participate in the police chase.  Craw and Vogel Facts ¶ 22.

[9]  The timing is unclear, but sometime after, Officer Murphy, too, heard a radio transmission: it described Dixon's vehicle, stated that the driver was being pursued by police, and claimed that the suspect had "attempted to hit multiple officers with his vehicle."  Murphy, Brown, and Dorchester Facts ¶ 20.

The chase continued.  Dixon eventually reached the Reservation and stopped his vehicle on private property.  Murphy, Brown, and Dorchester Facts ¶ 11.  Officer Dorchester and Officer Brown arrived soon after.  *Id.* ¶ 12.  Officer Brown exited his patrol car and approached plaintiff's car.  *Id.* ¶¶ 12–13.   He struck plaintiff in the head, pulled him from the car, threw plaintiff to the ground face down, and fell on top of him.  *Id.*; Pl.'s Resp. to Murphy, Brown, and Dorchester Facts ¶ 12; Ex. 1 to Lichtmacher Decl. at 23. Officer Murphy arrived on the scene and saw as Officers Dorchester and Brown struggling with plaintiff on the ground.  Murphy, Brown, and Dorchester Facts ¶¶ 21–23.

While Dixon was on the ground in a tangle of bodies, Officer Dorchester and Officer Brown commanded plaintiff to "surrender his hands."[10]  Murphy, Brown, and Dorchester Facts ¶ 14.  Plaintiff did not comply.  *Id.*  According to plaintiff, he *could* not comply: his arms were pinned underneath his body. Pl.'s Resp. to Murphy, Brown, and Dorchester Facts ¶ 14; Ex. 1 to Lichtmacher Decl. at 24.  In either case, Officer Dorchester and Officer Brown delivered striking blows to plaintiff's body—including his head— several times.  Murphy, Brown, and Dorchester Facts ¶ 15.  Officer Murphy also struck plaintiff two to three times in his head "to try to gain his

---

[10]  Officer Murphy heard Officers command plaintiff to do so multiple times.  Dorchester, Brown, and Murphy's Facts ¶ 24.

compliance." *Id.* ¶ 25.  Officer Dorchester and Officer Brown eventually

managed to put plaintiff in handcuffs.  *Id.* ¶ 16.  Plaintiff was arrested.

On November 9, 2017, an Onondaga County Grand Jury returned a nine-

count indictment that charged Dixon of criminal mischief, reckless

endangerment, unlawfully fleeing a police officer, reckless driving,

endangering the welfare of each of his three children, resisting arrest, and

unlawful possession of marihuana.  Breen and Moore's Facts ¶ 19; Ex. A to

Powers Decl., Dkt. No. 141-2 at 2–3.  These charges were later dismissed

upon a motion by the Onondaga District Attorney.  Pl.'s Opp'n, Dkt. No. 153

at 6.[11]  Plaintiff's lawsuit followed.

## III.  <u>LEGAL STANDARD</u>

Under Rule 56, summary judgment is proper where "the movant shows

that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is

genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986) (citations omitted).  A fact is material if it "might affect the outcome of

the suit under the governing law."  *Id.*  In reviewing the motion, the district

court must "draw all reasonable inferences against the party whose motion is

---

[11]  Pagination corresponds to CM/ECF.

under consideration." *Williams v. MTA Bus Co.*, 44 F.4th 115, 125 (2d Cir. 2022) (citation omitted).

## IV. <u>DISCUSSION</u>

There are six motions pending: defendants' separate motions for summary judgment and defendants' combined motion to strike various portions of Dixon's responses to defendants' statements of material fact.  Dkt. Nos. 135, 139, 140, 141, 143, 167.

### A.  <u>Threshold Matters</u>

Before turning to the merits of Dixon's civil rights claims, there are a few threshold matters that require attention.

#### 1.  <u>Unidentified Officers</u>

First, Dixon's operative complaint names as defendants various "unidentified officers."  *See* Am. Compl.  But plaintiff has failed to identify or serve these individuals.  Discovery has since closed.  Accordingly, these defendants will be dismissed without prejudice, and the Clerk of the Court will be directed to terminate them from this action.  *See* FED. R. CIV. P. 4(m).

#### 2.  <u>Abandonment</u>

Second, defendants argue that plaintiff has abandoned some or all of the claims he originally asserted against them.  As defendants explain, plaintiff omitted certain claims originally asserted in the amended complaint in his

responses to contention interrogatories[12] served during discovery.  Plaintiff then failed to respond to certain arguments set forth in each of defendants' moving papers.  Vogel and Craw Mem., Dkt. No. 135-15 at 12; Vogel and Craw Reply Mem., Dkt. No. 162 at 3–4; Breen and Moore Mem., Dkt. No. 141-24 at 13–14; Breen and Moore Reply Mem., Dkt. No. 165 at 2–3; Mims Mem., Dkt. No. 143-9 at 12; Mims Reply Mem., Dkt No. 161 at 2–5; Murphy, Brown, and Dorchester Mem., Dkt. No. 140-22 at 15; Murphy, Brown, and Dorchester Reply Mem., Dkt. No. 166 at 2–5.

The Second Circuit has yet to rule on this precise issue, but district courts in this Circuit generally treat a party's response to contention interrogatories as binding judicial admissions.  *See, e.g.*, *Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 260 (S.D.N.Y. 2021) (citing *Med. Educ. Servs., Inc. v. Reed Elsevier Grp., PLC*, 2008 WL 4449412, at *11 (S.D.N.Y. Sept. 30, 2008)); *see also* FED. R. CIV. P. 33(c) ("An answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence.").  This practice is not only supported by Rule 26,[13] but by the inherent purpose of contention interrogatories, *i.e.,* to narrow and clarify the

---

[12]  It should be noted that defendants' interrogatories were not specifically titled "contention interrogatories."  Ex. N-1 to D'Agostino Decl. at 2.  But contention interrogatories refer not to the form of the document, but the substance.  *See Fishon*, 2021 WL 4124661, at *1 (quotation omitted) ("It is sufficient if they will assist the parties in narrowing and clarifying the disputed issues in advance of summary judgment practice or trial.").

[13]  Briefly stated, Rule 26(e) imposes a continuing obligation on the parties to "supplement or correct" their responses to their Rule 26 disclosures.  FED. R. CIV. P. 26(e).

disputed issues ahead of further motion practice and/or trial.  *See Fishon v. Peloton Interactive, Inc.*, 2021 WL 4124661, at *1 (S.D.N.Y. Sept. 9, 2021).

In a similar vein, a party may abandon a claim or theory of liability by failing to oppose the movant's facially valid arguments in favor of summary judgment as to those claims and/or theories  *See Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014).  As the Second Circuit explained in *Jackson*, parties initially draft their pleadings broadly to include all possible theories of liability.  *See id.*  But parties are not married to the claims asserted in their pleading.  As the case progresses through discovery, parties often expeditiously dispose of, or implicitly abandon, claims or defenses for strategic or tactical reasons.  *Id.*

i. <u>Dixon's Remaining Claims Against Officer Mims</u>

First, Officer Mims argues that Dixon has abandoned many of the claims originally asserted against him.  Mims Mem. at 12; Mims Reply Mem. at 2–5. In support of this argument, Officer Mims points to plaintiff's responses to his contention interrogatories and to plaintiff's opposition papers to his motion for summary judgment.  Mims Reply Mem. at 2–5.

Upon review, Dixon has abandoned his false arrest, racial profiling, and malicious prosecution claims against Officer Mims.  In response to Officer Mims' contention interrogatories, plaintiff identified only claims for excessive

force, malicious prosecution and/or his right to a fair trial.  *See* Ex. K to D'Agostino Decl., Dkt. No. 143-5 at 4.

Likewise, in his opposition papers, Dixon only opposes Officer Mims' arguments related to the claims for excessive force and denial of his right to a fair trial.  Pl.'s Opp'n at 19–25.  Accordingly, only plaintiff's excessive force and fair trial claims remain pending against Officer Mims.  *See Jackson*, 766 F.3d at 196.

ii.  <u>Dixon's Remaining Claims Against Officer Breen and Office Moore</u>

Officer Breen and Officer Moore also argue that plaintiff has abandoned several claims asserted against them.  Breen and Moore Reply Mem. at 2–3. In support of this argument, Officer Breen and Officer Moore point to plaintiff's responses to their contention interrogatories and to plaintiff's opposition papers.  *Id.*

Upon review, Dixon's responses to Officer Breen and Officer Moore's contention interrogatories have narrowed his claims against them to excessive force, false arrest, malicious prosecution, and denial of his right to a fair trial.[14]  Breen and Moore Mem. at 14; Ex. L to D'Agostino Decl., Dkt. No. 141-7 at 3; Ex. M. to D'Agostino Decl., Dkt. No. 141-8 at 3.

---

[14]  Contrary to Officer Breen and Officer Moore's position that Dixon abandoned "any claim for excessive force" against the officers, plaintiff's responses to the contention interrogatories identify an excessive force claim based on a theory of failure to intervene.  Ex. L to D'Agostino Decl. at 3; Ex. M to D'Agostino Decl. at 3.  Therefore, plaintiff *has* opposed Officer Breen and Officer Moore's motion for summary judgment on his excessive force claims.

Officer Breen and Officer Moore further assert that Dixon also failed to respond to their arguments regarding plaintiff's false arrest and malicious prosecution claims.  Breen and Moore Reply Mem. at 2.  But a review of plaintiff's opposition papers confirms that he has not abandoned these claims.  Among other things, plaintiff argues that Officer Breen and Officer Moore furnished false narrative supplements to the district attorney and claims that these officers forcibly detained and/or constructively stopped him without probable cause.  Pl.'s Opp'n at 6–10.  Accordingly, plaintiff has abandoned only his racial profiling claims against Officer Breen and Officer Moore.

### iii.  Dixon's Remaining Claims Against Officer Vogel and Officer Craw

Officer Vogel and Officer Craw argue that Dixon has abandoned *all* of his claims against them.  Vogel and Craw Reply Mem. at 3–4.[15]  In support of this argument, Officer Vogel and Officer Craw point to plaintiff's responses to their contention interrogatories and to plaintiff's opposition papers.  *Id.*

Upon review, Dixon has abandoned his claims for excessive force, false arrest, malicious prosecution, and his right to a fair trial against Officer Vogel and Officer Craw.  In his responses to Officer Vogel's contention interrogatories, plaintiff identifies claims for excessive force, false arrest, and malicious prosecution.  Ex. N-1 to D'Agostino Decl., Dkt. No. 135-6 at 10–11.

---

[15]  In Officer Vogel and Officer Craw's initial memorandum, the officers argue that plaintiff has narrowed his claims against them to excessive force, false arrest, and malicious prosecution.  Vogel and Craw Mem. at 12.

In response to Officer Craw's contention interrogatories, plaintiff identified only an excessive force claim.  Ex. O to D'Agostino Decl., Dkt. No. 135-8 at 3.

In his opposition papers, Dixon failed to respond to Officer Vogel and Officer Craw's arguments regarding his excessive force, false arrest, or malicious prosecution claims.  Instead, plaintiff argued against summary judgment on his fair trial claims against Officer Vogel and Officer Craw.  Pl.'s Opp'n at 25–27.  But as discussed *supra*, plaintiff omitted his fair trial claim from his responses to Officer Vogel and Officer Craw's contention interrogatories.

Thus, Dixon has abandoned his claims for excessive force, false arrest, malicious prosecution, and denial of his right to a fair trial against Officer Vogel and Officer Craw.  *See Jackson*, 766 F.3d at 196.  Because these are the only claims remaining against these two defendants, Officer Vogel and Officer Craw will be dismissed from this action.

iv.  Dixon's Officer Murphy, Officer Brown, and Officer Dorchester

Officer Brown, Officer Murphy, and Officer Dorchester argue that plaintiff has also narrowed his claims against them.  Murphy, Brown, and Dorchester Reply Mem., Dkt. No. 166 at 3.  In support of this argument, Officer Brown, Officer Murphy, and Officer Dorchester point to plaintiff's responses to their contention interrogatories and to plaintiff's opposition.  *Id.*

Upon review, Dixon has abandoned his claims for false arrest, malicious prosecution, denial of his right to a fair trial, and racial profiling against Officer Murphy, Officer Brown, and Officer Dorchester.  In his responses to the officers' contention interrogatories, plaintiff only identified claims for excessive force, false arrest, malicious prosecution, and his right to a fair trial.[16]  Ex. P to D'Agostino Decl., Dkt. No. 140-10 at 3; Ex. Q to D'Agostino Decl., Dkt. No. 140-11 at 3; Ex. R to D'Agostino Decl., Dkt. No. 140-12 at 3. Dixon further narrowed his claims in his opposition papers by failing to respond to the officers' arguments concerning his claims for false arrest, malicious prosecution, or fair trial claims.  Therefore, only Dixon's excessive force claims remain pending against Officer Murphy, Officer Brown, and Officer Dorchester.  *See Jackson*, 766 F.3d at 196.

v.  <u>Dixon's Remaining Claims Against the City of Syracuse</u>

Finally, Dixon has voluntarily withdrawn his *Monell* claim (Count VI) against the City of Syracuse.  Pl.'s Opp'n at 19.  Because there are no other claims against this defendant, the City of Syracuse will be dismissed as a defendant from this action.

---

[16]  Dixon also describes a claim against Officer Brown for an illegal stop.  Ex. P to D'Agostino Decl. at 3.  But that claim has already been dismissed with prejudice.  *Dixon v. City of Syracuse*, 493 F. Supp. 3d 30, 42–44 (N.D.N.Y. 2020).

### 2. **Dixon's Response to Defendants' Statements of Material Fact**

Next, there are a few issues with the record that must be considered.  As is often the case at summary judgment, the hardest part of the analysis is trying to square away the relevant historical facts.  In doing so here, the Court will confine itself to the statements of material fact ("SOMF") furnished by the remaining defendants: Officer Mims, Officer Breen, Officer Moore, Officer Brown, Officer Murphy.  *Supra.*

At summary judgment, the moving party must file and serve a SOMF.  In response, the non-movant must respond to the SOMF to establish which facts are (and are not) in dispute.  This practice is governed by the Local Rules.

Local Rule 56.1(b) provides that:

> [t]he opposing party shall file a separate Response to the Statement of Material Facts.  The opposing party response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.

N.D.N.Y. L.R. 56.1(b).

i. <u>Dixon's Response to Officer Mims' SOMF</u>

Dixon failed to follow this Local Rule in several places.  First, plaintiff

failed to specifically controvert Officer Mims' assertion in paragraph three of

the SOMF.  There, Officer Mims states that:

> [a]t approximately 6:24 p.m. on April 22, 2017, the
> officers' attention was drawn to an occupied white
> Chevrolet Uplander, which was, *inter alia*, illegally
> parked on the south side of the 200-block of Rowland
> Street across from a known drug house, situated in a
> high crime area which is generally known to be an
> "open air" drug market, with heavy drug trafficking
> and sales.

Mims Facts ¶ 3 (citation omitted).  In response, plaintiff purports to deny this

assertion.  Pl.'s Resp. to Mims Facts ¶ 3.  In support of this denial, plaintiff

states that he was:

> pulled over, inches from the curb, to use his cell phone
> to order a pizza for his family, including his three
> young children, who were in the vehicle with him.

*Id.* (citation omitted).

This response fails to "specifically controvert" the factual assertion offered

by Officer Mims.  Dixon appears to be indirectly attempting to dispute

whether he was "illegally parked" by asserting that he was pulled over with

his children in the car for the purpose of calling in a delivery pizza.  But even

on his own version of events, plaintiff acknowledges that he was "inches from

the curb" when Officer Mims observed him on the 200-block of Rowland street.[17]  Pl.'s Resp. to Mims Facts ¶ 3.

Therefore, plaintiff's response fails to specifically controvert Officer Mims' assertion that he was illegally parked.  Accordingly, this fact will be deemed admitted in accordance with Local Rule 56.1(b).  *See* N.D.N.Y. L.R. 56.1(b).

Dixon's response to paragraph eight of Officer Mims' SOMF is similarly deficient.  There, Officer Mims states that he "told Mr. Dixon to step out of the car three times but Dixon refused to comply."  Mims Facts ¶ 8 (citation omitted).  In response, plaintiff admits in part and denies in part the veracity of the assertion.  Plaintiff states that he:

> admits that Mims was screaming at him to exit the vehicle. However, Plaintiff denies that he was simply refusing to comply, but instead was confused by the command and terrified to get out of the vehicle because he felt that he did nothing wrong. He was afraid of the gun being pointed at him, especially with his children in the car.

Pl.'s Resp. to Mims Facts ¶ 8 (citation omitted).

---

[17]  Under New York law, a "parked" car is defined as "the standing of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in loading or unloading merchandise or passengers."  N.Y. VEH. AND TRAF. LAW § 129.  As Dixon does not assert that he was in the process of unloading either passengers or merchandise—to the contrary he asserts that he was using his cellphone to order a delivery pizza—he has not placed the fact that he was illegally parked in dispute.

Upon review, this response explains plaintiff's motivation to remain in the vehicle.[18]  But it does not specifically controvert the assertion that plaintiff remained in his car.  Thus, the portion of Dixon's response to paragraph eight of Officer Mims' SOMF denying the assertion will be disregarded and Officer Mims' assertion in paragraph eight of the SOMF will be deemed admitted.  *See* N.D.N.Y. L.R. 56.1(b).

Finally, Dixon's responses to paragraph seventeen of Officer Mims' SOMF also fail to conform to the Local Rules.  In paragraph seventeen of his SOMF, Officer Mims states that:

> Mr. Dixon turned the Uplander around, swinging the rear of the car to the northeast portion of the intersection, so that the front of the car was facing southeast on South Geddes Street.

Mims Facts ¶ 17 (citation omitted).  In response, Dixon contends that he:

> can neither admit nor deny, as he does not have information sufficient to confirm the accuracy of the statement and placement of the vehicle at that exact time.

Pl.'s Resp. to Mims Facts ¶ 17.

This response does not conform with the Local Rules.  As discussed above, the non-movant's responses to the moving party's SOMF must admit and/or deny each factual assertion.  N.D.N.Y. L.R. 56.1(b).  Dixon's response has

---

[18]  This kind of narrative response is properly included in a plaintiff's statement of additional material fact ("SOAMF").  *See* N.D.N.Y. L.R. 56.1(b).

accomplished neither.  Accordingly, the Court will deem the factual assertion

contained in paragraph seventeen of Officer Mims' SOMF admitted.

### ii.  Dixon's Response to Officer Murphy, Officer Brown, and Officer Dorchester's SOMF

Portions of Dixon's response to Officer Murphy, Officer Brown, and Officer

Dorchester's SOMF also fail to conform to the Local Rules.

As noted above, the non-movant must respond to the movant's SOMF with

an admission and/or denial.  Should the non-movant wish to place additional

facts into dispute that the moving party has not identified in the SOMF, they

may do so by submitting a statement of additional material fact.  N.D.N.Y.

L.R. 56.1(b).

Upon review, Dixon has admitted to the assertions contained in

paragraphs eight and nine.  However, he has also improperly included

additional facts in this section.  This approach is inconsistent with the Local

Rules and "results in an unnecessary degree of confusion."  *LaFever v. Clarke*,

525 F. Supp. 3d 305, 326 (N.D.N.Y. 2021).  Accordingly, the Court will deem

the factual assertions contained in paragraphs eight and nine admitted.

Next, Dixon's responses to paragraphs five, ten, twelve, sixteen, twenty,

and twenty-seven fail to specifically controvert the factual allegations

contained in the SOMF.  In paragraph five, Officers Murphy and Brown

assert that they:

> heard over the radio that the Uplander had attempted to strike police officers, with the following broadcast over the radio:
>
> Dispatcher: 523, We need to confirm: were shots fired at you or the other way around, sir?
>
> Vehicle #523: Other way around. Suspect, uh, attempted to hit multiple officers with his vehicle.

Murphy, Brown, and Dorchester Facts ¶ 5 (citation omitted).  In response, plaintiff admits in part and denies in part this assertion.  Pl.'s Resp. to Murphy, Brown, and Dorchester Facts ¶ 5.  In particular, plaintiff contends that he:

> admits that this was the radio broadcast. However, Plaintiff denies the validity and truth of the facts relayed in the broadcast. Particularly, Plaintiff never tried to strike any officer with his vehicle. Plaintiff went out of his way to not strike Mims. Additionally, none of the other officers report being struck or an attempted strike by Plaintiff or his vehicle, and none of the other officers discharged their weapons.

*Id.* (citations omitted).

Upon review, this response fails to specifically controvert the fact that these officers heard the radio broadcast.[19]  Accordingly, this fact will be deemed admitted.

In paragraph ten, Officer Brown and Officer Dorchester state that

---

[19] Plaintiff has elsewhere placed into dispute the fact that he attempted to hit Officer Mims with his Uplander.  *See* Pl.'s Resp. to Mims Facts ¶ 19.

> By refusing to pull over for a police vehicle's lights and siren, and while driving on compromised tires/rims, Officer Brown concluded that Mr. Dixon was violating N.Y. Penal Law § 270.50 (Unlawful Fleeing), N.Y. Vehicle and Traffic Law § 1212 (Reckless Driving), and N.Y. Vehicle and Traffic Law § 1102 (Refusing to Comply).

Murphy, Brown, and Dorchester Facts ¶ 10.  In response, Dixon admits in part and denies in part this assertion.  Pl.'s Resp. to Murphy, Brown, and Dorchester Facts ¶ 10.  In response, plaintiff contends that:

> he did not pull over. However, Plaintiff was too afraid to stop his vehicle, which had been struck by Mims' gun multiple times, causing damage to his vehicle and potentially danger to his three children.

*Id.* (citation omitted).

This is the same kind of narrative response that, as discussed above, fails to specifically controvert the factual assertion contained in paragraph ten.  Dixon's partial denial does not deny that he failed to pull over the vehicle.  Pl.'s Resp. to Murphy, Brown, and Dorchester Facts ¶ 10.  Instead, this response attempts to offer an explanation and describe his motivation to remain driving.  *Id.*  Accordingly, this paragraph will be deemed admitted.

Dixon's response to Officer Brown and Officer Dorchester's assertion in paragraph twelve fairs no better.  In paragraph twelve, the officers state that "Officer Brown exited his vehicle and approached the Uplander, striking Mr. Dixon once in the head."  Murphy, Brown, and Dorchester Facts ¶ 12 (citation

omitted).  Again, plaintiff admits in part and denies in part this assertion.
Pl.'s Resp. to Murphy, Brown, and Dorchester Facts ¶ 12.  And again,
plaintiff adds additional facts—facts that are included in the following
paragraph of the SOMF to which plaintiff admits.  *See* Murphy, Brown, and
Dorchester Facts ¶ 13; Pl.'s Resp. to Murphy, Brown, and Dorchester Facts ¶
13.  Accordingly, paragraph twelve is deemed admitted.

In paragraph sixteen, Officer Brown and Officer Dorchester state that
"[a]fter striking Mr. Dixon, Officers Brown and Dorchester were able to get
Mr. Dixon in handcuffs."  Murphy, Brown, and Dorchester Facts ¶ 16
(citation omitted).  In response, Dixon admits in part and denies in part this
assertion.  Pl.'s Resp. to Murphy, Brown, and Dorchester Facts ¶ 16.  In
particular, plaintiff contends that while he:

> admits that eventually Brown and Dorchester brought
> Mr. Dixon up, and handcuffed him. Plaintiff denies
> that striking and excessive force was necessary to get
> Mr. Dixon in handcuffs, as Mr. Dixon was thrown to
> the ground, where his hands were trapped under his
> body, weighed down by at least two men, and was
> additionally being beaten by up to five officers. Mr.
> Dixon was not given the ability to comply with a
> demand for his hands, if one was even given. Only
> when the beating stopped was Mr. Dixon handcuffed
> and brought to stand up.

*Id.* (citation omitted).

Upon review, Dixon's response fails to specifically controvert Officer
Brown and Officer Dorchester's factual assertion in paragraph sixteen.

Instead, plaintiff attempts to provide additional facts that do not respond to the nature of the assertion contained in the SOMF.  Accordingly, this paragraph will be deemed admitted.

In paragraph twenty-seven, Officer Murphy states that his "involvement in the use of force incident took less than two minutes."  Murphy, Brown, and Dorchester Facts ¶ 27 (citation omitted).  In response, in lieu of an admission or a denial, Dixon states that he "can neither admit nor deny, however Murphy did nothing to intervene to limit the use of excessive force."  Pl.'s Resp. to Murphy, Brown, and Dorchester Facts ¶ 27 (citation omitted).

This response also fails to conform to the Local Rules, which require an admission and/or denial to the factual assertions contained in the movant's SOMF.  *Supra.*  Dixon has again attempted to include additional facts that he wishes to place into disputes.  Accordingly, paragraph twenty-seven will be deemed admitted.

In paragraph twenty, Officer Murphy states that:

> [p]rior to first encountering Mr. Dixon, Officer Murphy heard over the radio that the driver of the white Uplander being pursued had "attempted to hit multiple officers with his vehicle."

Murphy, Brown, and Dorchester Facts ¶ 20 (citation omitted).  In response, Dixon admits in part and denies in part the assertion, stating that:

> he does not deny that Murphy alleged to hear this, but
> denies that it was an accurate representation of what
> actually happened, as Dixon never struck or hit Mims
> with his vehicle.

Pl.'s Resp. to Murphy, Brown, and Dorchester Facts ¶ 20.

This response mirrors Dixon's response to paragraph five of the SOMF, *i.e.,* he does not dispute that Officer Murphy heard the radio transmission, but disputes that the transmission was an accurate description of the events unfolding at the scene. *See id*. The portion of plaintiff's response that denies the allegation set forth in paragraph twenty—like his response to paragraph five—fails to specifically controvert the movant's statement. Accordingly, paragraph twenty of the SOMF will be deemed admitted.

### 3. **Defendants' Motion to Strike**

Defendants have moved pursuant to Rule 12(f) to strike portions of Dixon's responses to the SOMFs. Defs.' Mot. to Strike at 2. Upon review, defendants' motion to strike will be denied as moot. The Local Rules establish the parameters within which plaintiff must respond to defendants' factual assertions. As explained in detail, *supra*, the Court has applied those limitations and has disregarded certain portions of plaintiff's responses.

### 4. **The Video Evidence**

Lastly, the parties rely in part upon video footage of the First and Second Incidents.   Therefore, a discussion as to how to properly consider video evidence is warranted.

"As the Supreme Court has made clear, video evidence must be considered in determining whether any material facts genuinely need to be tried." *Cornell v. Village of Clayton*, 691 F. Supp. 3d 608, 618 (N.D.N.Y. 2023).  But "the mere existence of a videotape in the record depicting some or all of the events in dispute will not always be dispositive at the summary judgment stage." *Id.* (cleaned up).

Whereas here, the video evidence fails to clearly contradict the version of events told by Dixon, or corroborate the version of events told by defendants, "the appropriate course of action is to permit the jury an opportunity to resolve the parties' competing versions of events, in conjunction with the video, through the ordinary fact-finding processes in which juries engage." *Id.* (cleaned up); *Scott v. Harris*, 550 U.S. 372, 378–79 (2007) (holding that summary judgment is warranted when the record—including video evidence—clearly contradicts the version of events told by the non-movant).

Therefore, the video evidence will be "considered and carefully reviewed, but the interpretation of the events is most likely appropriately reserved for

the triers of fact." *Cornell*, 691 F. Supp. 3d at 618 (quoting *Wilkinson v. Lewis*, 289 F. Supp. 3d 371, 379 (N.D.N.Y. 2018)).

## B. **Summary Judgment**

What remains to be considered are the merits.  Defendants have moved for summary judgment dismissing Dixon's remaining claims.  Mims Mem., Dkt. No. 143-9 at 10–27; Breen and Moore Mem., Dkt. No. 141-24 at 13–27; Murphy, Brown, and Dorchester Mem., Dkt. No. 140-22 at 16–29.

As discussed *supra*, Dixon has abandoned all claims against Officer Vogel, Officer Craw, and the City of Syracuse—necessitating their dismissal from this case.  *Supra*.  Plaintiff has also abandoned his racial profiling claim each of the remaining defendants.  *Supra*.  This leaves plaintiff's claims for (1) excessive force, (2) false arrest, (3) malicious prosecution, and (4) the denial of his right to a fair trial against Officer Mims, Officer Breen, Officer Moore, Officer Brown, Officer Dorchester, Officer Murphy (hereinafter "defendants").

### 1. **Excessive Force** (Counts I and II)

Dixon brings a § 1983 claim for excessive force against Officer Mims, Officer Breen, Officer Moore, Officer Murphy, Officer Brown, and Officer Dorchester.  Am. Compl. ¶¶ 39–49.

Plaintiffs may vindicate their Fourth Amendment rights under § 1983 when the conduct of state actors "'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and

laws." *Durr v. Slator*, 558 F. Supp. 3d 1, 20 (N.D.N.Y. 2021) (quoting *Rizzo v. Goode*, 432 U.S. 362, 370–71 (1976)).  A plaintiff suffers an actionable constitutional deprivation under the Fourth Amendment if law enforcement subjects them to "unreasonable and therefore excessive force" while effecting an arrest[,]" or *seizure*.  *Cornell*, 691 F. Supp. 3d at 618 (quoting *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017)).

In other words, to establish a § 1983 claim for excessive force, the plaintiff must first establish that he or she was seized.  A plaintiff is deemed to have been "seized" within the meaning of the Fourth Amendment if their liberty has been restrained by either physical force or a show of authority.  *Torres v. Madrid*, 592 U.S. 306, 311 (2021) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).  In determining whether a suspect was seized by police, the Court must carefully consider the sequence of events as if reviewing the frames on a film roll.  After all, a seizure can occur for a matter of seconds—even if the suspect ultimately escapes.  *See id.* 592 U.S. at 318.

Once the plaintiff has demonstrated that they were seized, the "plaintiff must show that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *LaFever*, 525 F. Supp. 3d at (quotation omitted).  Whether force was objectively reasonable is a fact-specific inquiry that "requires balancing the nature and quality of the intrusion on the

plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 331 (quotation omitted).

Specifically, courts confronted with an excessive force claim must consider the particular facts of a case, including the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).

"With respect to deadly force, it is objectively reasonable for an officer to use deadly force to apprehend a suspect where the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Smith v. Sawyer*, 435 F. Supp. 3d 417, 433 (N.D.N.Y. 2020) (cleaned up).

As relevant here, a police officer must be personally involved in the use of force for liability under § 1983 to attach. *See Durr*, 558 F. Supp. 3d at 20. "A police officer is personally involved in the use of excessive force if he 'directly participates in an assault, or was present during the assault with reasonable opportunity to intercede on plaintiff's behalf yet failed to do so.'" *Id.* (quoting *Mcrae v. City of Hudson*, 2015 WL 27587, at *6 (N.D.N.Y. Jan. 21, 2015)).

An officer is liable for their failure to intervene when he or she had actual knowledge of the use of excessive force, had a realistic opportunity to

intervene and prevent the harm from occurring, but "disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force." *Durr*, 558 F. Supp. 3d at 20. "Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless, 'considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" *Sloley v. VanBramer*, 945 F.3d 30, 47 (2d Cir. 2019) (quoting *Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014)).

i. <u>Officer Mims' Use of Force</u>

First, Dixon alleges that Officer Mims directly participated in using excessive force on him during the First and the Second Incidents. Pl.'s Opp'n at 7–8, 25. Officer Mims offers two arguments in favor of summary judgment: (1) plaintiff has not submitted any evidence that Officer Mims struck him during the First Incident; and (2) that plaintiff was never seized during the Second Incident.[20] Mims Mem. at 12–17.

Upon review, Dixon has not marshalled sufficient evidence from which a reasonable jury could determine that Officer Mims used excessive force during either the First Incident or the Second Incident. Turning first to the First Incident that took place on Rowland street: plaintiff has not placed into dispute whether he was actively seized or was touched by officer Mims.

---

[20] Officer Mims argues in the alternative that he is entitled to qualified immunity for his use of deadly force during the Second Incident. Mims Mem. at 17–21. However, for the reasons articulated below, the Court need not reach the issue of Officer Mims' qualified immunity.

According to Dixon, after being approached by Officer Mims, Officer Mims drew his gun and pointed it at plaintiff before instructing him to get out of the car.  Pl.'s Resp. to Mims Facts ¶ 7; Mims Facts ¶ 8.  Therefore, in considering the totality of the circumstances, including both Officer Mims' display of authority, including a weapon, a reasonable person in plaintiff's position would not have felt free to leave.[21]  *U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980).  And plaintiff submitted to Officer Mims's authority: he reached for his license to show Officer Mims after he was instructed to produce his license and registration.  Thus, plaintiff was momentarily seized by Officer Mims.

But that seizure ended as a matter of law once Dixon ceased to submit to Officer Mims's authority and fled the scene.  Critically, it remains undisputed that Officer Mims began to punch the plexiglass covering plaintiff's driver-side door as plaintiff began to flee.

Further, Dixon has also offered no evidence that Officer Mims seized him during the First Incident by use of force.  Plaintiff does not claim that Officer Mims touched him as he struck the plexiglass.  Pl.'s Resp. to Mims Facts ¶

---

[21]  While it remains disputed whether Officer Mims drew firearm on plaintiff as he instructed him to exit his vehicle, Ex. 1 to Lichtmacher Decl. at 11, case law within this Circuit is clear that an officer's act of brandishing a weapon when approaching a suspect is not excessive force as a matter of law.  *See, e.g.*, *Dunkelberger v. Dunkelberger*, 2015 WL 5730605, at *15 (S.D.N.Y. Sept. 30, 2015) (collecting cases).

11.  This is fatal to a seizure-by-force theory, because "such seizures strictly contemplate the application of force to the *body* of the suspect."  *U.S. v. Aryeetey*, 2024 WL 2412204, at *7 (S.D.N.Y. May 23, 2024) (quoting *California v. Hodari D.*, 499 U.S. 721, 625 (1991).

Even assuming that Dixon was still seized by Officer Mims' *acquisition of control* as he began to strike the plexiglass, plaintiff's excessive force would still fail as a matter of law.  Put simply, absent any application of force to the plaintiff's body—by Officer Mims' own hands or otherwise—there can be no § 1983 claim for excessive force.  Therefore, no reasonable jury could review the relevant historical facts and determine that Officer Mims used excessive force on plaintiff during the First Incident.

Turning next to Officer Mims' conduct during the Second Incident: Dixon has failed to marshal evidence from which a reasonable jury could conclude that he was ever seized by Officer Mims.  It remains undisputed that plaintiff never submitted to Officer Mims' authority—or to the authority of the other officers on the scene.

As Officer Mims attempted to make his initial approach to plaintiff during the Second Incident, plaintiff again put his car into reverse to avoid Officer Mims.  Pl.'s Resp. to Mims Facts ¶¶ 15–16; Mims Facts ¶ 17.  Plaintiff then turned his car around to drive past, or around, Officer Mims.  Pl.'s Resp. to

Mims Facts ¶ 19; Ex. 1 to Lichtmacher Decl. at 18–19.  Thus, plaintiff failed
to submit to Officer Mims' display of authority.

Dixon has also failed to identify evidence that a reasonable jury could
conclude that he was seized by force.  It is undisputed that none of the shots
that Officer Mims fired at plaintiff's car struck plaintiff or stopped plaintiff's
car from continuing the flee down South Geddes street. Mims Facts ¶¶ 19–21.
Thus, plaintiff was not seized by force for the purposes of a § 1983 claim.

This might seem like a strange result.  But it is precisely the kind of result
contemplated by Justice Stevens in *Hodari D.*  499 U.S. at 630 (Stevens, J.,
dissenting) ("In its decision, the Court assumes, without acknowledging, that
a police officer may now fire his weapon at an innocent citizen and not
implicate the Fourth Amendment—as long as he misses his target.").  This
concern was reiterated by thirty years later in *Torres.*  592 U.S. at 349
(Gorsuch, J., dissenting) ("[A] suspect who evades a hail of bullets unscathed,
or one who endures a series of flash-bang grenades untouched, is out of
luck.").

Under governing precedent, Dixon, too, cannot establish that Officer Mims
ever seized him and therefore, cannot pursue a federal § 1983 claim for
Officer Mims' attempted use of deadly force during the Second Incident.[22]

---

[22] Plaintiff would likely have a state law remedy.  But plaintiff has not raised any state law
claims stemming from Officer Mims' conduct during the second incident.

In the alternative, Dixon has advanced a failure to intervene claim against Officer Mims.  But plaintiff has not submitted any evidence that Officer Mims was present for another officer's use of force.[23]  Accordingly, Officer Mims' motion for summary judgment dismissing plaintiff's excessive force claim will be granted.

ii.  <u>Officer Breen and Moore's Use of Force</u>

Next, Dixon asserts that Officer Breen and Officer Moore failed to intervene to prevent Officer Mims from using excessive force on him.  Am. Compl. ¶¶ 45–49.

Upon review, these contingent, or derivative, claims also fail.  Plaintiffs bringing an excessive force claim under a failure-to-intervene theory "may recover . . . only by showing that the purported failure led to the denial of clearly established statutory or constitutional rights, a failure to intervene claim is contingent upon the disposition of the [underlying] primary claims[.]"  *Martinez v. City of N.Y.*, 564 F. Supp. 3d 88, 106–07 (E.D.N.Y. 2021) (citations omitted).

As discussed above, Dixon cannot establish that Officer Mims violated his Fourth Amendment rights.  *Supra.*  Thus, plaintiff's failure to intervene claims against Officer Breen and Officer Moore arising from this incident fail

---

[23]  It is undisputed that Officer Mims was not present on the Reservation for the Third Incident.  Mims Facts ¶ 23.

as a matter of law.  Accordingly, Officer Breen and Officer Moore's motion for summary judgment as to plaintiff's excessive force claim will be granted.

    iii.  <u>Officer Brown, Officer Murphy, and Officer Dorchester's Use of Force</u>

Dixon has also asserted an excessive force claim against Officer Murphy, Officer Brown, and Officer Dorchester for their involvement in the Third Incident.[24]  Am. Compl. ¶¶ 39–44.

Upon review, Dixon has raised triable issues of fact on this claim.  First, unlike plaintiff's claim against Officer Mims, it is undisputed that he was seized by Officer Brown and Officer Dorchester—and later by Officer Murphy—when he was pulled from his vehicle and thrown to the ground during the Third Incident.  Murphy, Brown, and Dorchester Facts ¶¶ 11–13, 20; Pl.'s Resp. to 12; Ex. 1 to Lichtmacher Decl. at 23.

Second, Dixon has validly placed into dispute the question of whether he was already subdued (and not offering resistance) when Officer Brown, Officer Murphy, and/or Officer Dorchester used force to gain his "compliance" and effectuate his arrest.  It is undisputed that while plaintiff was pinned on the ground underneath Officer Brown and Officer Dorchester, each officers struck plaintiff's body—and head—multiple times.  Murphy, Brown, and Dorchester Facts ¶¶ 15, 25.  But according to the officers, they struck

---

[24]  It is undisputed that Officer Brown, Officer Murphy, and Officer Dorchester were not present for the First Incident on Rowland street nor the Second Incident at the intersection of South Geddes and Hartson streets.  Brown, Murphy, and Dorchester Facts ¶¶ 1–2, 18–19.

plaintiff to "gain his compliance" and surrender his hands.  Murphy, Brown, and Dorchester Facts ¶¶ 14, 25.  According to plaintiff, he was physically unable to comply with the officers' requests to surrender his hands because his arms were pinned underneath him.  Pl.'s Resp. to Murphy, Brown, and Dorchester Facts ¶ 14; Ex. 1 to Lichtmacher Decl. at 24.

Therefore, a reasonable jury could review the relevant historical facts and determine that Officer Murphy, Officer Brown, and Officer Dorchester used excessive force during the Third Incident.  Accordingly, Officer Murphy, Officer Brown, and Officer Dorchester's motion for summary judgment will be denied.[25]

## 2. **False Arrest** (Count III)

Dixon has also raised a § 1983 false arrest claim.  Am. Compl. ¶¶ 50–55.  As discussed, *supra*, plaintiff has abandoned this claim against all defendants except for Officer Breen and Officer Moore.  In his opposition papers, Dixon argues that Officer Breen and Officer Moore's initial stop was not predicated on *reasonable suspicion*.  Pl.'s Opp'n at 10.

---

[25]  In their moving papers, Officer Brown, Officer Murphy, and Officer Dorchester argue that they are each entitled to qualified immunity for their use of force.  Brown, Murphy, Dorchester Mem. at 24–28.  However, deciding the issue of qualified immunity would be premature at this posture.  That is because officers are entitled to qualified immunity only when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Moore v. Keller*, 2021 WL 4066541, at *5 (N.D.N.Y. Sept. 7, 2021) (quoting *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020)).  Given the disputes of the relevant historical facts, the Court is unable to make a determination regarding qualified immunity.

False arrest claims are "grounded in the Fourth Amendment right of an individual to be free from unreasonable seizures." *Thomas v. Town of Lloyd*, –F. Supp. 3d–, 2024 WL 118939, at *5 (N.D.N.Y. Jan. 11, 2024) (quoting *LaFever*, 525 F. Supp. 3d at 329). To bring a false arrest claim under § 1983, a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Id.* (quoting *LaFever*, 525 F. Supp. 3d at 329). Confinement is privileged if the arresting officer had probable cause. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Thus, the existence of probable cause is a complete defense to a false arrest claim. *Id.*

Upon review, Officer Breen and Officer Moore are entitled to summary judgment on Dixon's false arrest claim. It is undisputed that during the First Incident, plaintiff was stopped by Officer Mims, Officer Breen, and Officer Moore on Rowland street when his vehicle was parked in a "no-parking" zone. Breen and Moore Facts ¶ 5. That is, Officer Breen and Officer Moore had probable cause to believe that plaintiff was actively violating the New York Vehicle and Traffic Law. *See* N.Y. Veh. & Traf. Law § 129.

Therefore, Dixon's false arrest claim fails. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his

presence, he may, without violating the Fourth Amendment, arrest the offender.").  Accordingly, Officer Breen and Officer Moore's motion for summary judgment as to plaintiff's false arrest claims will be granted.

### 3. **Malicious Prosecution** (Count IV)

Next, Dixon has asserted a malicious prosecution claim against Officer Breen and Officer Moore.  Am. Compl. ¶¶ 56–63.  Officer Breen and Officer Moore argue that plaintiff cannot rebut the presumption of probable cause established by the grand jury indictment.  Breen and Moore Mem. at 23.

"To state a malicious prosecution claim under § 1983, [a] plaintiff must allege a Fourth Amendment deprivation as well as a malicious prosecution claim under state law." *Levine v. Babiarz*, 2024 WL 1463767, at *3 (N.D.N.Y. Apr. 4, 2024) (citation omitted).  Under New York law, the plaintiff must establish "(1) the initiation of a proceeding; (2) that terminated favorably to plaintiff; (3) lacking probable cause; and (4) malice." *Alexander v. City of Syracuse*, 573 F. Supp. 3d 711, 737 (N.D.N.Y. 2021) (quotation omitted).  To implicate a plaintiff's Fourth Amendment rights, the plaintiff must also "demonstrate a 'sufficient post-arraignment liberty restraint.'" *Kee v. City of N.Y.*, 12 F.4th 150, 162 (2d Cir. 2021) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).

As relevant here, a defendant-officer can be found to "initiate" criminal proceedings when he or she creates false information that is likely to

influence a jury's decision *and* forwards that information to prosecutors. *Beckwith v. City of Syracuse*, 642 F. Supp. 3d 283, 289 (N.D.N.Y. 2022). Where there is no "evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment, a claim of malicious prosecution against the officer must fail." *Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 104 (N.D.N.Y. 2023) (quotation omitted). But where the "initiated proceeding culminated in an indictment against the plaintiff, a court must presume that probable cause existed unless the plaintiff can establish that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Alexander*, 573 F. Supp. 3d at 738 (quoting *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003)).

Upon review, Officer Breen and Officer Moore's motion for summary judgment on Dixon's malicious prosecution claim must be granted. Plaintiff has not marshalled any evidence from which a reasonable jury could find in his favor. Specifically, plaintiff has failed to identify evidence from which to conclude that either Officer Breen or Officer Moore initiated the criminal proceedings against him.

Dixon was indicted by a grand jury. Breen and Moore Facts ¶ 19. So it is presumed that probable cause existed at the time the indictment was returned. *Alexander*, 573 F. Supp. 3d at 738. It is undisputed that neither

- 40 -

Officer Breen nor Officer Moore participated in the decision to prosecute plaintiff.  *Id.* ¶¶ 16–18.  It is further undisputed that neither Officer Breen nor Officer Moore prepared or filed any charges or other accusatory instruments against plaintiff.  *Id.*

Dixon submits no evidence that this indictment was obtained by fraud, perjury, the suppression of evidence, or bad faith, or that Officer Breen or Officer Moore were personally involved in any such conduct.  At best, plaintiff suggests that it is enough to infer that Officer Breen or Officer Moore acted in bad faith when the completed their narrative supplements because there are inconsistencies between the officers' reports.  *Infra*.  That is not enough.

Even if it were, Dixon submits no evidence that Officer Breen or Officer Moore forwarded their narrative supplements to prosecutors, or that prosecutors relied on those supplements in seeking the indictment.  Instead, plaintiff's opposition appears to rest on the assertion that these documents are "regularly forwarded to the Onondaga County District Attorney (DA) in criminal prosecutions[,]" and that plaintiff obtained copies of the officers' narrative supplements from his criminal defense attorney.   Pl.'s Opp'n at 6.

Absent more, this meager showing—grounded in speculation—is plainly insufficient to resist summary judgment.  Accordingly, Officer Breen and Officer Moore's motion for summary judgment dismissing plaintiff's malicious prosecution claims will be granted.

4. **<u>Right to a Fair Trial</u>** (Count V)

Finally, Dixon has brought a § 1983 fair trial claim against Officer Mims, Officer Breen, and Officer Moore.  Am. Compl. ¶¶ 64–68.

Plaintiffs bringing a § 1983 claim to vindicate their right to a fair trial pursuant to the Fourteenth Amendment must establish that an investigating official fabricated evidence that was likely to influence a jury's decision, forwarded that information to prosecutors, and that the plaintiff suffered a deprivation of his liberty as a result.  *Werkheiser*, 655 F. Supp. 3d at 106. Plaintiffs must not only establish that the statements were false, but that the officers or investigating official *knew* that their statements were false and made them anyway.  *Id.* (collecting cases).

As relevant here, liability can attach under § 1983 even if there was an independent basis to indict or convict the plaintiff.  *Werkheiser*, 655 F. Supp. 3d at 107.  This is because "a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process."  *Ricciuti v. N.Y.C. Trans. Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).

i. <u>Officer Mims</u>

Upon review, Dixon has not marshalled sufficient evidence from which a reasonable jury could conclude that Officer Mims fabricated evidence:  It is undisputed that none of the officers participated in the decision to prosecute

Dixon.  It is also undisputed that they never filed any charges or other accusatory instruments against him.  Mims Facts ¶ 24; Breen and Moore Facts ¶¶ 16–19.  With regard to Officer Mims, plaintiff argues only that he "falsified the narrative which initiated the sequence of events leading to the false charges being brought against" him.  Pl.'s Opp'n at 25.  But plaintiff leaves the Court guessing as to *what evidence* Officer Mims might have fabricated.  Plaintiff cites to no documents or narrative supplements generated by Officer Mims.

Without evidence that Officer Mims knowingly fabricated some piece of specific evidence that was forwarded to a prosecutor, Dixon's denial of fair trial rights claim against Officer Mims fails as a matter of law.  Accordingly, Officer Mims' motion for summary judgment dismissing plaintiff's denial of fair trial rights claim will be granted.

ii.  Officer Breen and Officer Moore

Dixon also brings his fair trial claim against Officer Breen and Officer Moore.  According to plaintiff, Officer Breen and Officer Moore each generated narrative supplements that contain false statements regarding plaintiff's conduct during the Second Incident.[26]  Pl.'s Opp'n at 8

---

[26]  Dixon also argues that Officer Breen and Officer Moore's narrative supplements falsely accuse him of illegally parking on Rowland street.  Pl.'s Opp'n at 6–7.  However, as plaintiff was never charged with a traffic violation, these statements are irrelevant to his denial of fair trial rights claim.

Upon review, no reasonable jury could conclude that Officer Breen or Officer Moore fabricated evidence.  In support of his denial of a fair trial claim against Officer Breen and Officer Moore, Dixon asks the Court to infer from apparent inconsistencies in each of the officers' narrative supplements that they knowingly falsified their statements by stating that plaintiff drove his car toward Officer Mims.  Specifically, plaintiff points to the fact that Officer Moore omitted mention of Officer Mims jumping over the hood of plaintiff's oncoming vehicle, while Officer Breen includes that fact.  Pl.'s Opp'n at 8.

Critically, however, Dixon submits no evidence that the officers knew that this information was false.  At best, plaintiff has established that these two narratives were imprecise.  Even accepting plaintiff's naked asserted that narrative supplements authored by police officers are "regularly forwarded" to prosecutors, Pl.'s Opp'n at 6, plaintiff has failed to make the requisite showing that either officer intentionally fabricated their narrative supplement.

Accordingly, Officer Breen and Officer Moore's motion for summary judgment dismissing plaintiff's fair trial claims will be granted.

## V.  <u>CONCLUSION</u>

In sum, Dixon has abandoned all of his claims against Officer Vogel, Officer Craw, and the City of Syracuse.  Plaintiff also abandoned his claims

for racial profiling against all defendants.  Plaintiff failed to raise triable issues of fact on his excessive force claims against Officer Mims, Officer Breen, and Officer Moore.  Plaintiff has, however, raised triable issues of fact with regard to his excessive force claims against Officer Murphy, Officer Brown, and Officer Dorchester stemming from the Third Incident.  Plaintiff has failed to raise triable issues of fact on his false arrest, malicious prosecution and fair trial rights claims.

Therefore, it is

ORDERED that

1.  Defendants' motion to strike is DENIED;

2.  Officer Mims, Officer Breen, and Officer Moore's motion for summary judgment is GRANTED and the Clerk of the Court is directed to terminate these parties from this action;

3.  Plaintiff has abandoned all claims against the City of Syracuse, Officer Vogel, and Officer Craw, accordingly the Clerk of the Court is directed to terminate these parties from this action; and

4.  Officer Brown, Officer Murphy, and Officer Dorchester's motion for summary judgment is DENIED.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated: September 18, 2024
         Utica, New York.